or it will be enormously missed by me at this court. We will grant the motions and I'm particularly myself delighted to do so based on my own experience working with the two of you as well. Welcome to the bar. Judge Ryan, do you solemnly swear or affirm that you will comport yourself as attorney and counsel of this court uprightly and affordably and that you will support the constitution of the United States of America? Welcome to the bar of the United States Court of Appeals. Congratulations, now get back to work. The first case for argument this morning is 14-1040, Robert Bosch v. Snap-On Incorporated. Mr. Franklin, whenever you're ready. Thank you, Your Honor, and may it please the court, Jonathan Franklin for the appellant Robert Bosch, LLC. Appellees have not carried their burden to overcome the strong presumption that the claim terms at issue were not drafted in means plus function format and there is at a minimum a disputed issue of fact on that question. After having convinced the district court to apply the opposite presumption that a claim term was drafted in means plus function format, appellees now do not contest that that was legal error. As a result, it is now uncontested that both disputed claim terms are presumed not to invoke section 112-6 and that presumption matters. The court has stressed in numerous cases that the presumption is a strong one that is not readily overcome. That is because the decision whether to invoke the statute is left to the discretion of the patentee and also changes how the claim term is evaluated for definiteness. Where the patentee uses the traditional means for language, then the claim sometimes has a broader scope, but the patentee also knows that it needs to delineate corresponding structure and specification. To be just straight up and just sort of cut to the chase, I obviously appreciate that there's not a presumption here and that the presumption cuts in your favor, but I really am struggling with finding out how, with concluding that program loading device and program recognition device recite anything other than function. Because we've even got some cases, I know you cite some cases like Invencio, but there are other cases where device and in this context really lead you to the conclusion that it's purely functional. Well, Invencio is one of those cases where it recited a modernizing device, which the court then said had sufficient structure because one skilled in the art would understand that. And we have expert testimony in this case that the district court improperly disregarded, in our view, that says that one skilled in the art would understand program loading device and program recognition device to be physical or actual electronic structures. Why isn't that testimony properly characterized as entirely conclusory? Wagner asserted these are devices, but didn't point to any objective basis on which one could say that's sensible or just conclusory. I don't think it was entirely conclusory, Your Honor. He not only said this is from the perspective of myself as one skilled in the art, and he was skilled in the art, he met all of the criteria that even the defendants proposed, but he also went on to list examples of these kinds of devices that he personally had used in his career. But means things have examples, right? I mean, if I say device for doing such and such, I can list 17 examples, but that phrase, a device for doing something, or put the for doing in front of device, that doesn't mean that any of those have that as a name. And the critical thing is whether the phrase in the claim is understood to name a device or to call a category of things that perform a function. And he said that this does call a category of things that perform a function. And again, the analysis is different when you're talking about a claim, as I think in Your Honor's hypothetical, where there is indisputably a means plus function claim. Then, you can't look to expert testimony to supply the structure, because that's going to have to be in the specification. But here, where there's not a use of the means, the court has held, and Rembrandt is another good case, where the court said expert testimony can supply the perspective of one skilled in the art. And all we're saying, really, at this stage of the case, where it was a summary adjudication, there was no factual findings made, the district court didn't say the testimony was conclusory. He just excluded it on two grounds that I think both of which were error. The first ground, he said, is that it's subjective. Well, yes, he did say certain things from a subjective intent, but this part of his testimony was not subjective. It was based on his perspective as one skilled in the art. And the second thing that the court said was that this was like NOAA systems, where you can't supply, by expert testimony, structure that's not in the specification. And again, that analysis doesn't apply here, where we're talking about the very first step of the analysis, where you're trying to determine whether or not something is in means plus function format. And the court in Inventio made clear that that test is based on the perspective of one skilled in the art. So when we're talking about a summary adjudication here, at a bare minimum, this case should be reversed and remanded so that we can have a full factual understanding, factual analysis. There was no hearing here. There was no testimony taken. There was no evidentiary findings made. And so very, at just that bare minimum… Isn't this a claim construction question? It's a claim, well, it's a hybrid. It is partly claim construction, but it's also validity. But again, even in claim… But it's a question of law, is it not? The ultimate question is one of law, but it can depend on questions of fact. And so in Rembrandt, for example, the court reversed a summary judgment saying that there was a disputed issue of fact about the sufficiency of a disclosed algorithm. And that was for the prior fact to determine, and that would be a subsidiary question that then bears on the legal question. But we're not at that kind of, is there enough structure in the specification. We're at the threshold stage of, is this functional claiming or not? Right. That's a pure legal question. It is a legal question. Pure, I would not say it's pure, because it can, in this case, does depend on factual, preliminary factual determinations. Rembrandt is another good case where the court said, in that case, the presumption was overcome that the statute said means in it. And the court said that the presumption that it was means plus function was overcome by the expert's testimony, because the expert is one skilled in the art. And the test in, as the court said in Bentio, the test is ultimately whether claim language invokes, this is from page 1360, ultimately whether claim language invokes 126 depends on how one skilled in the art would understand the significance of that claim language assessed against the presumption. So ultimately the question is. But is this at all a legal question? I mean, I don't want to wade into the controversy of what standard review and what parts are legal or not, because it's, as you know, a controversial issue. But at least under our present case law, that all seems to be a legal issue. I don't understand why we need to send this back for factual finding. We have the two expert reports and the district court construction, and we can look at it and decide whether we think the district court was correct or not. If the facts are undisputed, the court could. I don't think, though, that the perspective of one. How is this any different than any other claim construction? I don't. Well, it's different because validity depends on it. And there we have an issue about the clear and convincing standard as well, which I could get into. I don't think we've reached that here because we're talking about a summary of communication. Okay. I get where you're going. Even under claim construction, though. Is there any meaningful difference between the term program recognition device and a means for recognizing a program? Well, the critical difference is that if you use means for recognizing a program, then the inventor, the patentee, has signaled that they are putting this into means plus function format. I understand that, and that's our presumption. But that seems to me you don't win just because of that. Otherwise, everybody would just leave off the word means. Well, no. We don't win because of that. But we do win because the language of the patent itself. That's what I'm asking. Is there any difference between using the word means or not using the word means? Yes. If one skilled in the art understands program recognition device and program loading device to connote physical structure, as the court said in the lighting world case, the burden is on them to show that the claim terms, when read against the specification and the extrinsic evidence, are devoid of anything that could be construed as structure. And so here, the expert testimony is that one skilled in the art would know this. And then you look at the patent as well, and you find out that these… Where does, in your expert's report, he give any examples of structure? He says these are – he gives examples for each of these things. And he says here are examples of electronic devices that I, as one skilled in the art, have actually used that are program recognition and program loading device. For example, a program recognition – one example of a program recognition device is a bus monitor. But that testimony doesn't establish that the patent defined a structure. I mean, we've got cases like Blackboard and so forth that had similar questions. And that testimony wasn't listing examples of possible structures, which concluded – was found to be insufficient. But it was found to be insufficient on a different question. It was found to be insufficient on the question of whether or not the specification disclosed structure for a term that was conceitedly or found to be in means plus function format. So Blackboard is an example of that. Other examples that the other side cites were cases where the court was looking at a claim that was in means plus function format and then deciding whether or not the specifications disclosed the requisite structure. And in that case, the expert testimony has – you can't – you have to be – you have to denote the structure and specification. So the expert can't supply that. Here we are in a different issue. And that is an issue of whether one skilled in the art would understand from these terms. And Judge Hughes, he said that these terms encompass a defined type of device, an electronic device, that he, as one skilled in the art, understands to be an electronic device. And as a practical matter, you can't query, recognize, or load an updated version of a computer software program into a connected control unit of an automobile except through a physical electronic circuit. And so what we're saying here is that one skilled in the art would understand that these are program recognition circuits and program loading circuits. They don't – obviously the patent didn't use that word, but one skilled in the art understands it. And in Nuventio, the same thing happened. You had a modernizing device, and the court said, based on the – looking at the patent, and I believe also expert testimony, one looked at the modernizing device and held that it is a circuit. It's an electronic circuit. So in this case, we have the same thing. And what we're asking really at the alternative part of our argument is – I mean, is circuit encompass computer? Well, he said that these are electronic devices. He gave examples of them. One of them is an installer. And so an installer would be a computer device. But if this – Because it seems to me there's not a whole lot in the record, but just thinking about it, you could hook up a computer to a car, and it's going to recognize whether there's a certain software program going on, and if not, download it. But I don't know that that's necessarily what anybody would think of as a program recognition device. And there's expert testimony on the other side that says the other thing. There is expert testimony on the other side, and that's what we're saying. There is a disputed issue of fact here. Our expert – If we disagree with you that it's a disputed – it's a factual issue, though, because I'm not sure that you're right about that. That's a claim construction. And the district court relied more heavily on the other side. I mean, we get a look at it to no vote, but can't we rely on the other side's expert, too, to come up with our claim construction? I suppose, but you have competing experts, and then the court would have to resolve that issue. I don't understand how that could be resolved as a legal matter without – I think a lot of other people agree with you, but in various other examples of claim construction issues, we do the same thing. We get competing expert reports, and as a matter of law, we look at them all. We come up with what we think will claim construction. Then I think the court uses the strong presumption, and that they haven't overcome it because we have evidence on the other side. So they haven't overcome it. Can I ask you about this? What seemed to me the crucial sentence in the Wagner Declaration is that 3086 added up 19. This is where he ends up concluding the term program loading device has a generally understood meaning in the art. But what precedes that is because each of the component terms have commonly understood meanings, and the preceding paragraph gives dictionary definitions of program and load, why should we not read, therefore, the critical sentence here, because the term program loading device has a generally understood meaning in the art, as essentially a erroneous legal assertion? You could say the same thing about program loading means, never mind about the presumption, right? Devices of, what do we call that? A nonce word, just like means. It's maybe not a magic word, but it's a kind of empty word. So why isn't it conspicuous that while he found dictionary definitions of program and dictionary definitions of load, he found and cited in any event not a single documented usage of the three-word phrase to name something? Well, I would actually point to court, Your Honor. I would point to the previous page on program loading device and the next page on program recognition device, and I'm into my rebuttals, I understand. But on page 3085, paragraph 12, he says, I understand a program loading device to mean an electronic device configured to copy or move a computer program into a memory area from which the program is executed. In my opinion, it is reasonably well understood by one's ordinary skill in the art that the term program loading device has that meaning. And then he goes on to say a program loading device, an example, and that's on page 15, an example is an installer. So I don't think it's conclusory, Your Honor, and I would reserve the remainder of my time for rebuttals. Thank you. Mr. Robeson. Thank you, Your Honor. Good morning. What we have here is an issue of claim construction, an issue of law, and the presumption of means plus function we agree does not apply. We are looking solely at the question of whether there is a preponderance of evidence that establishes that these claims should be entitled to section 112, paragraph 6, or invoking 112, paragraph 6. Entitled to? I don't think that's quite right. Well, entitled, it is a privilege, Your Honor, because It's a privilege that in this case would defeat the patent. It would, but it's an exception to the rule, because usually you have to have some type of specific term that is sufficiently definite to one of ordinary skill of the art. The test is whether there's sufficiently definite structure. And if you don't have that kind of term, then you have the privilege or the opportunity to use something that's functional. But if you use something that's functional, then of course you go back to the second section, second test, which is to see if there's corresponding structure. And in this case, we believe we have met, by the preponderance of the evidence, the test to show that program loading device, program recognition device, are nothing more than functional terms. What say you to your friend's argument and suggestion that Dr. Ladner's declaration was sufficient to get out of summary judgment model? Well, first of all, there was no summary judgment. This is claim construction. And many times claim construction issues like this go up on appeal. So, first point. Second point, these type of experts' depositions, declarations, go back and forth in any kind of claim construction issue. You can find litigation-induced experts, usually on both sides. And cases like Lighting Ballast and others have said, this does not change something from an issue of law to an issue of fact. These are not really facts, they are opinions. And the whole idea of claim construction is to have a uniform view of what the claims would be for all to know. This is not fact-specific to the parties. This is legal-specific to the patent. And so the mere fact that there may be competing opinions, and if the court reads them, I think the court can see which are opinions and which are even alleged facts, does not create an issue that prevents a claim construction, even a claim construction that would find indefinite. But what do we do, even if we agree that it's de novo, we have one expert report saying the other thing, we have one saying the other thing, and they're both kind of conclusory. None of them give any real details. And if we consider them awash, then we're left with the presumption in your friend's favor. Well, we're not left with that. Because what we're left with is the fact that there is nothing that is in the patent, in the file history, in the specification, in any contemporaneous documents, in any evidence that implicates structure. We're left with the patent. Well, we don't get there if we don't consider it a means plus function term, and it doesn't use the word means. Your Honor, I beg to differ that it is important to look at the patent and the specification and the file history in order to inform the process. We can't look at that claim term in a vacuum. We can look at it in connection with the other claim terms, and what we see is that it is a functional term that's used in a functional way. What's the difference between an installer and a program loading device? If they'd used the word installer, I think they'd probably be okay, right? If they'd used the word installer, the evidence doesn't say whether that would be okay. We don't have expert opinion on that. That's the allegation made by Dr. Wagner. The job of this court isn't to rewrite the claim. Well, let's just assume that installer would be okay. That's what I'm really trying to get at is not whether that would be okay, but the difference between that term and program loading device. To me, they seem pretty similar. Again, I beg to differ. It's a clear differentiation because device, as many courts have said, MIT and others, is simply a generic term. Add that to created functional words, program recognition or program loading, you have what some courts have called a nonce term, a term used for that purpose and nothing other, and not one that really has a definition. When we talk about what a hypothetical person of skill in the art may know, this is not really a question of fact. This is a question of law in the sense of interpreting what one of skill would know. The question isn't whether Dr. Wagner knows or can come up with a litigation-induced definition. The question is whether those of skill in the art who are confronted with this term would understand the term. What we're left with is, at best, a functional definition provided by Dr. Wagner for these terms. If you look at A3085 in paragraph 12 or A3087 in paragraph 21, he basically says a program loading device is a device, but it's an electronic device and it does something. He says for program recognition device, it's a detection unit, whatever that is, that's configured to identify something. He has, in essence, in his litigation-induced definition... Can I ask you a hypothetical? Suppose you had a patent for a hearing aid device. In that sense, you still have the same word device, which can be a functional equivalent of means, and so it could be read as a means for hearing or aid of hearing. But everybody knows what a hearing aid device is. Correct. So how do we determine, if we take out the word device here, whether... I mean, look at this. Program recognition is not something that somebody of ordinary skill would know. And I know we have experts, but the presumption is for you to defeat, not him to win. Exactly. And if it's so close, then why shouldn't he prevail? Because it's not close, and by preponderance of the evidence, we win. Judge Cleland hit it right on the head. He looked at the definition of program and load and program and recognition. He said, they don't impart any structure. They just talk about function. People know what a hearing aid is. It used to be, years ago, people would draft claims and say, let's put a... I'm sorry. No, I'm a little worried about venturing down that lane, though, because it suggests that in areas where judges may be familiar with the types of devices at issue, that it may be okay, but in certain other areas, and we have a whole lot of cases today where I'm not familiar with areas, that, including this one, we think it is functional just because we don't know. So in that situation, let's test the conclusory nature of the statement. How do we know? We have Dr. Wagner saying it is known to one, at least him, of ordinary skill, but where is the evidence that shows it's not conclusory? Where are the contemporaneous documents? Where is even a document authored by him at that time? Where is anything that ever uses either of these phrases, program loading device or program recognition device, to one of ordinary skill? What you see in some of the other cases is examples of documents, of publications, of patents that are contemporaneous. So in the case of Harambee... What would happen here if the specification had contained a couple embodiments of a program loading device? The question would still remain, is there a sufficiently definite structure or class of structures? Simply to list as Dr. Wagner did, and I think it's informative to take a look at what he listed. For instance, at page 83087, paragraph 24, he says, here's the following types of program recognition devices. Translators, converters, receivers, bus monitors, calibration applications, and development environment. Some things, some software. If that were in there, that would not give us sufficiently definite structure. A class of structures, something that provides boundaries. And this is why I said to Judge Serrano it's an entitlement. It's an entitlement to permit you to claim functionally as long as there's a reference point in the specification against which a boundary can be made, an equivalence can be made. Simply saying, here's a bunch of stuff. It could be any one of these, but not knowing the limit doesn't give you a boundary, doesn't inform one of ordinary skill as to the scope of the claim, and that's what the patent has to do. So, I think it's fair also to say, moving to the second point, that there is a concession of no corresponding structure in the specification. Now, we're not saying that's a prerequisite for us to say that their 112.6 doesn't apply. Corresponding structure could have been, Your Honor, an example of some structure against which the equivalence could be measured. But here we see in both the blue brief and gray brief a comment that that really isn't an issue. And if you go to the point of establishing, by clear and convincing evidence, the second prong of 112.6, that there is no corresponding structure, that's conceived and that has been established. So what we're left with is, as the Court has said, the first question of whether 112.6 applies. Your Honor, if there are no additional questions, I'll sit down. Okay. Thank you. Thank you. Can I just ask you what it is for me this seems to be focusing on, and that is understanding of the Wagner Declaration. One of the points that was just made is that the declaration should be insufficient for a variety of reasons. But one is that the definition offered, the meaning identified in paragraph 12, 3085, is itself in functional terms, which I think the argument goes strongly suggests that this declaration doesn't even straight up declare. This is a term that people like me and other similarly skilled artisans understand to actually name a class of structures, as opposed to being a generic functional term. I think that that's maybe parsing it a bit too far. I think he did say, and if you look at the next 14, the program loading device had a generally understood meaning in the art at the time the application was filed. He says that. Now they can contest that statement. They can make the arguments that you're making on remand. Right, but I guess, at least for me, I'm thinking about how to read this declaration as a whole. One traditional way of reading documents is to say, well, it takes one thing out of context. It might mean one thing, but you sort of understand that the other pieces are actually explaining what the particular clauses are. So why as a whole does this not? Let me answer this specifically with regard to that paragraph. He said it's an electronic device. That is enough. It's not in this case where we have the burden on them. They have to show, as the court said in Flow Healthcare, that it is devoid of anything that can be construed as structure. Even using the word circuit in a claim is enough to impart structure, even though there are many different kinds of circuits. Using the word connector is enough to impart structure. So in this case, all we need to show is that one skilled in the art would understand it as a physical electronic device. Now he gives more than that, but that's all one needs to know, because then it's not necessarily definite. I think it's important to stress this. That doesn't mean that the claim term is definite. It means that it is judged according to the usual rules that apply to all other claims, under which one looks at whether one skilled in the art would comprehend the means and bounds of the claim. And in this case, I think notably, there is no dispute that the claim terms pass that ordinary test. They propose definite constructions. We propose definite constructions. So all we're saying is that it's in the world of the usual claim term. And then they can argue, or they could have argued, that it was indefinite. They didn't. But all we're saying is that that's the test that's used. It doesn't mean it's definite. It just means that it's in that rubric, and it's not in means plus function. And to the extent that it's a factual issue about whether one skilled in the art would understand it, if they're saying their conclusory declaration, which frankly I think is even more conclusory than ours, if their conclusory declaration stands, then the presumption hasn't been rebutted because we have evidence. So either way one looks at it, we ought to win this case, either because they didn't carry the burden or because there's a disputed issue of fact that needs to be resolved on remand. And Judge Hughes, that commonly happens even in claim construction, that there are evidentiary determinations that's made. Now there's a dispute that the Supreme Court has right now as to whether or not that's reviewed de novo or abuse of discretion, but it is clear that there are and can be factual issues that underlie even claim construction. Thank you, Your Honor.